[DO NOT PUBLISH]

## In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-12480

Non-Argument Calendar

_____

THOMAS DAVIS,

Plaintiff-Appellant,

*versus*

MIAMI-DADE COUNTY,
a political subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-23715-RNS

_____

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Thomas Davis appeals from the district court's order granting his former employer Miami-Dade County's motion to dismiss his complaint for failure to state a claim. According to the complaint -- which raised race and age discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Florida Civil Rights Act ("FCRA") -- Davis was a white man working in the County's Office of the Commission Auditor. Davis alleged that despite never having given him any negative feedback, the County fired him -- with only an opaque and vague explanation -- and replaced him with a much younger Black man who had been his subordinate. The County moved to dismiss the complaint, and the district court agreed. It reasoned that because Davis had neither alleged a prima facie case of discrimination under the *McDonnell Douglas* evidentiary framework nor offered a "convincing mosaic" of circumstantial evidence to support his case, Davis had failed to state a claim.

After careful review, we conclude that the district court applied the wrong legal standard to assess the sufficiency of Davis's complaint. The correct pleading standard is the familiar Rule 12(b)(6) standard explicated by the Supreme Court in *Twombly* and *Iqbal*. Under this standard, Davis alleged sufficient facts to state his

23-12480                 Opinion of the Court                 3

claims.  We reverse and remand the case to the district court for further proceedings consistent with this Opinion.

I.

These are the relevant facts, as alleged in the complaint.  Davis is a white man who was hired in June 2017 as Director of Policy and Legislation for the Miami-Dade County Board of County Commissioners, in the Office of the Commission Auditor.  He was qualified for this position based on, among other things, his prior career as an air force officer.  During his 32-month tenure working for the County, Davis performed his job duties as he understood them and was never disciplined or counseled for any misconduct or performance issues.  Additionally, the County had a policy of giving employees an evaluation annually.  But although Davis made several requests for an annual evaluation, he never received one.

Davis's supervisor was a Black man named Adeyinka Majekodunmi.  In February 2020, when Davis was 59 years old, Majekodunmi summarily fired Davis on the sole ground that "Davis was not meeting Majekodunmi's vision."  After firing him, the County gave Davis's job duties to his subordinate, a 32-year-old Black man named Phillip Edwards, who had started working for the County around when Davis had.  Davis was the only white man in a leadership position in the Office of Commission Auditor at the time of his termination.

Davis sued the County, alleging that it had engaged in race discrimination in violation of Title VII, 42 U.S.C. § 2000e, and the

FCRA, Fla. Stat. § 760.10; and age discrimination in violation of the ADEA, 29 U.S.C. § 623.  The County moved to dismiss.

The district court granted the County's motion and dismissed Davis's complaint with prejudice.  The court said that for Davis to state his discrimination claims through circumstantial evidence, as he was attempting to do, he needed to either "plead[] facts that could establish the County's discrimination through the *McDonnell Douglas* framework," or "present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  The court determined that Davis had failed to allege sufficient facts to proceed on either of these paths.  According to the court, Davis had not established a prima facie presumption of discrimination under *McDonnell Douglas* because he had not alleged the existence of a similarly situated individual outside his protected class who had been treated better than him.  Nor had he alleged a convincing mosaic of circumstantial evidence supporting his claim because he had alleged a "short list of unremarkable facts" that fell "far short of painting a 'convincing mosaic' that his termination was motivated by any kind of discrimination against him."  Rather, the court reasoned, Davis's allegation that his supervisor had let him go because he was not meeting the supervisor's "vision" suggested a legitimate and non-discriminatory reason for Davis's termination.

Davis timely appealed.

## II.

We review a district court's ruling on a Rule 12(b)(6) motion *de novo*, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Indeed, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But while a complaint is not required to contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted and alteration adopted). That is to say, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Here, Davis argues that the district court erred in dismissing his employment discrimination claims for failure to state a claim, or, in the alternative, that the court should have allowed him to amend his complaint. Because we agree with Davis that the district court's dismissal was erroneous, we do not reach whether the district court should have allowed Davis to amend his complaint.

A.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The FCRA makes unlawful the same. *See* Fla. Stat. § 760.10(1)(a). Decisions construing Title VII guide the analysis of claims under the FCRA. *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1389–90 (11th Cir. 1998).

The ADEA, meanwhile, prohibits employers from discriminating against an employee who is at least 40 years old because of the employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To assert an action under the ADEA, an employee must establish that his age was the "but for" cause of the adverse employment action. *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).

B.

In order for Davis to plead his discrimination claims, the district court said that Davis -- who was not seeking to rely on direct evidence of discrimination -- could plead his claims in one of two ways. First, he could make out a prima facie case under *McDonnell*

*Douglas*.  In the alternative, he could present a convincing mosaic of circumstantial evidence.  But, as we'll explain, neither *McDonnell Douglas* nor "convincing mosaic" is a pleading standard that should be used at the Rule 12(b)(6) stage.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court set forth a tool that courts may employ to help marshal the evidence in a discrimination case.  *Id.* at 802.  Under this framework, a plaintiff can establish a rebuttable presumption of intentional discrimination if she can make out a prima facie case of discrimination by showing that "(1) she belongs to a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified to perform the job in question, and (4) her employer treated 'similarly situated' employees outside her class more favorably." *Tynes v. Fla. Dep't of Juvenile Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (quotations omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802).  To prove the fourth element, the plaintiff must present "evidence of a comparator -- someone who is similarly situated in all material respects." *Id.* (quotations omitted).

If a prima facie showing is made, the burden shifts to the employer to offer evidence of a valid, nondiscriminatory justification for the adverse employment action.  "Once that justification is offered, the presumption of discrimination falls away and the plaintiff tries to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination." *Id.*  "This final question merges with the plaintiff's

ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." *Id.* (quotations omitted).

We've often emphasized that the *McDonnell Douglas* framework is "an evidentiary tool," not an independent standard of liability, and certainly not a pleading standard. *Id.* at 944–45; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). This means that it is not a proper gauge for ascertaining if a party has stated a claim sufficient to survive a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 511 ("[The Supreme Court] has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). Rather, "*McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Comcast Corp. v. Nat'l Ass'n of African Am.- Owned Media*, 589 U.S. 327, 340 (2020). Thus, we've squarely held that *McDonnell Douglas* is "the wrong legal standard" to apply at the pleading stage, and have reversed district court dismissals for using it to assess the sufficiency of a complaint. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam).

It may be true that a plaintiff who alleges sufficient facts to establish a prima facie case under *McDonnell Douglas* will *a fortiori* survive a motion to dismiss, because *McDonnell Douglas* requires all the elements of a fully stated claim, and more. But that is not how the district court applied it here; the court faulted Davis for "utterly fail[ing] to plead facts that would allow the Court to reasonably

infer that he satisfies" the *McDonnell Douglas* framework. In any event, invoking *McDonnell Douglas* at the pleading stage is likely to do more harm than good, since it risks making even well-pleaded claims look inadequate by not measuring up to a standard they never had to achieve. All of this is to say that the district court should not have applied *McDonnell Douglas* at the pleading stage.

The second term the district court used to evaluate Davis's pleading was "convincing mosaic." It took this term from summary judgment cases where *McDonnell Douglas* has proved unhelpful -- where, for example, the plaintiff "lack[s] adequate comparators but otherwise ha[s] circumstantial evidence of discrimination." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023); *see also Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021) ("[T]he 'convincing mosaic' theory can be of particular significance when the plaintiff cannot identify a similarly situated comparator."). This approach has been colorfully referred to as a "convincing mosaic" of circumstantial evidence. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)). Nevertheless, "a 'convincing mosaic' is a metaphor, not a legal test and not a framework." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). To underscore this point, the Seventh Circuit -- where the phrase originated -- has lamented the courts' misuse of the phrase "convincing mosaic" to imply a legal test, when it is not a test at all. *See Ortiz*, 834 F.3d at 765.

Our Court has applied the term in this way: "A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action -- the ultimate inquiry in a discrimination lawsuit." *Tynes*, 88 F.4th at 946. In other words, a "'convincing mosaic of circumstantial evidence' just means 'evidence.'" *Id.* at 951 (Newsom, J., concurring). And "a mosaic -- in its truest sense a collection -- isn't necessary to defeat summary judgment; a single item of evidence can at least theoretically suffice." *Id.* at 955 (Newsom, J., concurring). The kinds of evidence likely to be probative of intentional discrimination include "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Id.* at 946 n.2 (quotations omitted).

Typically, the "convincing mosaic" standard is used at the summary judgment stage, *after* the parties have gone through discovery. *See, e.g.*, *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("[A] plaintiff will always survive summary judgment if he presents . . . a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." (quotations omitted)); *Smith*, 644 F.3d at 1328 (same); *Tynes*, 88 F.4th at 946 (same). We've never discussed whether it is appropriate for courts to look for a "convincing mosaic" at the pleading stage. But it stands to reason that it is not. When a court is looking for "a 'convincing mosaic' of circumstantial evidence," *Tynes*, 99 F.4th at 946, it is looking for *evidence*. At the pleading stage, the question is not

one of evidence, but of pleading facts -- which the court must take as true -- with enough specificity to state a claim. *See Iqbal*, 556 U.S. at 678.

In short, neither the *McDonnell Douglas* framework nor the "convincing mosaic" metaphor are pleading standards. Accordingly, the district court erred when it held that Davis was required either to establish a prima facie claim under *McDonnell Douglas* or to present a convincing mosaic of circumstantial evidence.

## C.

Instead, the correct pleading standard in a discrimination case is the same as in any other case: "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In a discrimination case, that means that the complaint "need only provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Surtain*, 789 F.3d at 1246 (quotations omitted).

Applying this familiar pleading standard, Davis has alleged sufficient facts to state his claims for race and age discrimination. According to the complaint, Davis was 59 years old when he was fired and replaced by a considerably younger man, Edwards. Edwards had originally been hired as Davis's subordinate only three years previously, around the same time that Davis himself was

hired.  When he was fired, Davis was the only man of his race in a leadership position, and when he was replaced by Edwards, Davis was replaced by a man of a different race.

This alone would not be enough to plead intentional discrimination.  The County argues, and we agree, that "[i]t simply cannot be the case that because a 59-year[-]old white man -- who was hired by the same employer at age 56 -- is dismissed by a black man, that it *automatically* states a plausible case of discrimination that satisfies the *Twombly/Iqbal* standard."  (Emphasis added).

But here, there is more.  Davis also alleges that the County's only reason for firing him was that he was not meeting Majekodunmi's "vision" -- an opaque reason at best.  Employers may fire at-will employees for any non-discriminatory reason, *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015), but the court is free to scrutinize an employer's decision to check that it is not mere pretext for discrimination, *see Hurlbert v. St. Mary's Health Care Sys. Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (recognizing that "an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext").  The County's decision is particularly worth scrutinizing in this case, where Davis has also alleged that he was the only white man in a leadership position when he was fired, and that, in the 32 months he worked for the County, he was never informed of any performance issues, never counseled for any misconduct, and never given an annual evaluation, despite requesting one several times and despite the fact that it was "in accordance

with County policies" to receive an annual evaluation. In particular, he was never told that his "vision" did not comport with the vision of the office. We would expect that if an employee were genuinely not meeting his employer's "vision" over a period of almost three years, the employer would warn him that he was not meeting expectations and give him a chance to improve before firing him. These facts thus present an allegation of discrimination that is "plausible on its face." *Iqbal*, 556 U.S. at 678.[1]

The County argues that "not meeting your boss'[s] vision of the job is a legitimate non-discriminatory reason for dismissal," and that it was not suspicious to give Davis's work to Edwards, who had worked for the County just as long as Davis and therefore had the same level of experience. It's true that the County *could* have had

---

[1] As for the County's reliance on *Mitchell v. City of Miami Beach*, 2022 WL 1746919 (S.D. Fla. May 31, 2022), *aff'd*, 2024 WL 140065 (11th Cir. 2024), it is unhelpful. In *Mitchell*, the plaintiff was a white non-Hispanic man who applied for various positions within the police department and was rejected from each one because, he was told, "he did not do better in the interviews." *Id.* at *1–2. Other Black and Hispanic men and women got the jobs instead. *Id.* at *2. The district court dismissed the plaintiff's race and age discrimination claims for failure to state a claim. *Id.* at *4. But notably, *Mitchell* is an unpublished district court decision that is not binding on us and that our Court affirmed on the entirely unrelated ground that the plaintiff had abandoned all his arguments. *Mitchell*, 2024 WL 140065, at *3. In any case, firing an employee for not meeting a "vision" -- without giving him negative feedback, disciplining or counselling him for performance issues, or ever formally evaluating him (despite his repeated requests) -- is nothing like passing an employee over for a competitive assignment because he did not perform well in the interview process.

nondiscriminatory reasons for firing Davis for not meeting Majekodunmi's "vision" and for giving his work to Edwards.

But the fact, as alleged in the complaint, that the County's only stated reason for firing Davis was that he didn't meet Majekodunmi's "vision" is suspect. To begin with, "[v]ision" is a vague term that can mean many things, from the literal "action of seeing with the bodily eye," to "[a] mental concept of a distinct or vivid kind," and "[t]he action or fact of seeing or contemplating something not actually present to the eye[, like] foresight," to the "[a]bility to conceive what might be attempted or achieved, esp. in the realm of politics." *Vision*, Oxford English Dictionary (June 2024). Not only are there many meanings behind the term, but it can be applied in various ways. Majekodunmi could've meant that he had a plan for how the office would run and he didn't see Davis as a part of that ideal office, whether because of his work product, his personality, or -- the most sinister possibility -- because of his race or age. Or Majekodunmi could've meant that he'd asked Davis to carry out work in a certain way, and Davis had failed to do so. If that were the case, though, it seems odd for the County not to have given Davis any negative performance evaluations, or even a single annual evaluation, for his entire 32-month stint at the office, notwithstanding having been repeatedly asked to provide Davis with an evaluation and notwithstanding that it was County policy to provide one.

In any event, we are at the motion-to-dismiss stage, and a complaint alleging employment discrimination must simply state

23-12480                Opinion of the Court                15

sufficient "factual content" to "allow[] the court to draw the reasonable inference" that the employer had discriminatory intent when it fired the plaintiff.  *See Iqbal*, 556 U.S. at 678.  And the complaint offers no "obvious alternative explanation" for his sudden firing, without so much as a word of warning that he was not meeting expectations.  *See id*. at 682 (quoting *Twombly*, 550 U.S. at 567).  Nor is it likely, as the County argues, that Edwards was as experienced as Davis -- otherwise the County would not have seen fit to place Davis as Edwards's supervisor when it first hired the two men.  Of course, it remains to be seen whether Davis can prove with competent evidence the allegations he has raised in his complaint.  But at the pleading stage, his allegations are enough.

The County also argues that, because it hired Davis when he was 56 years old, it cannot possibly be an employer who discriminates on the basis of age.  But under this rationale, no employer could ever discriminate against any employee based on a characteristic the employee had at the time of hiring.  There could never be a successful race discrimination claim -- because, after all, the employer must have chosen to hire the employee in the first place, knowing the employee's race.  Clearly, race discrimination claims exist and are sometimes successful (tellingly, the County does not make the same argument for Davis's race discrimination claims).  Nor does the County cite a single case for this argument.

The County finally takes issue with the fact that Edwards has not been alleged to be a materially similarly situated comparator.  No matter.  As we've already explained at length, a plaintiff need

not make out a *McDonnell Douglas* prima facie case -- which discusses materially similarly situated comparators -- in order to allege a discrimination claim. Indeed, we've recognized that a plaintiff may have a legitimate discrimination claim even if there is no other employee against whom the plaintiff can perform a direct comparison. *See Smith*, 644 F.3d at 1328.

In sum, Davis does not need to allege a comparator because he does not need to allege a prima facie case under the *McDonnell Douglas* framework in order to state a claim. Nor does he, as the district court suggested, need to show a convincing mosaic of circumstantial evidence. Rather, because Davis has "provide[d] enough factual matter (taken as true) to suggest intentional . . . discrimination," he has sufficiently pleaded his race and age discrimination claims. *Surtain*, 789 F.3d at 1246; *see Twombly*, 550 U.S. at 555–56.

**REVERSED AND REMANDED.**